IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KATHERINE A. CURETON | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| | * | Civil Action No. 8:09-cv-00334-AW |
| vs. | * | |
| | * | |
| MONTGOMERY COUNTY BOARD | * | |
| OF EDUCATION, | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*

## Memorandum Opinion

Plaintiff Katherine Cureton, who is proceeding *pro se*, brought this action against

Defendant Montgomery County Board of Education ("the Board") and ten Board employees

("Individual Defendants") alleging violations of Title VII, the Americans with Disabilities Act

("ADA"), and the Family and Medical Leave Act ("FMLA"). *See* Doc. No. 1. The Court

dismissed the Title VII and ADA claims against Individual Defendants. *See* Doc. No. 27.

Plaintiff subsequently amended her Complaint on July 17, 2009, naming only the Board as

Defendant and stating claims for race and sex discrimination and retaliation under Title VII and

violations of the ADA and FMLA. *See* Doc. No. 31. The Court subsequently granted

Defendant's motion to dismiss all claims but three: (1) the Title VII race-based discrimination

claim; (2) the claim of retaliation for filing an EEOC claim; and (3) the FMLA claim. *See* Doc.

No. 38.Currently pending before the Court is Defendant's motion for summary judgment on all

remaining claims. *See* Doc. No. 68. The Court has reviewed the entire record, as well as the

pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md.

2010). For the reasons set forth below, the Court GRANTS Defendant's motion for summary

judgment.

I.        **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are adopted from the Court's prior memorandum opinion with changes as necessary to reflect subsequent developments in the discovery record. Plaintiff, a black woman, started working for Defendant as a substitute secondary school counselor in January 2004 and began permanent employment as a secondary school counselor by "open contract" in August 2004.  She received positive evaluations for the 2005-2006 school year and gained tenure status.

Plaintiff was subsequently injured in a car accident while doing an errand for the school on April 6, 2006, and filed a workmen's compensation claim in June 2006.  On September 19, 2006, Plaintiff's doctor sent a medical clearance to the Office of the Director of Staffing and Recruitment that cleared Plaintiff to return to work with work-related accommodations as of October 9, 2006.  Plaintiff contacted Linda Kimmel Johnson, Staffing Specialist for Defendant, about what staff positions would be available on October 9. Johnson wrote back that as soon as Plaintiff received full medical clearance, "we will make a determination as to whether a position, for which you are qualified, exists. In your case, your certification is in school counseling K-12 and Teacher, Elementary 1-6 and Middle School Education."

On October 26, 2006, Johnson assigned Plaintiff to a full-time fifth grade teaching position at Stedwick Elementary School, but Plaintiff declined the position. Doc. No. 68 Ex. 11. Plaintiff then took medical leave from December 2006 to January 12, 2007. Plaintiff claims that in December 2006, she applied for a placement at North Chevy Chase Elementary School as a school counselor, and that Defendant denied her application around January 1, 2007. Plaintiff claims that the position was subsequently filled by a Caucasian female. On January 19, 2007, Johnson assigned Plaintiff to a fourth grade teaching position at Harmony Hills Elementary

School. Plaintiff again declined the assignment, this time stating that her medical leave had been extended effective January 13, 2007.

On March 11, 2007, Defendant assigned Plaintiff to an eighth grade teaching position at Martin Luther King, Jr. Middle School.  Plaintiff subsequently returned to medical leave without pay from May 7, 2007 to June 30, 2007. During this time, the principal at Plaintiff's school, Marc Cohen, sent Plaintiff written reprimands based on the fact that he had not been given notice of such leave and had not been given notice regarding Plaintiff's multiple absences during the period of March 13, 2007 to May 15, 2007.

On May 30, 2007, Jane Woodburn, Director of Recruitment and Staffing for Defendant, informed Plaintiff that a school counselor position had opened up at Paint Branch High School, and that she would be placed there effective July 1, 2007. After Plaintiff began working at Paint Branch High School, Plaintiff requested and the Chief Operating Officer denied Plaintiff's request of an advance of personal illness hours on August 27, 2007 and September 15, 2007. However, Plaintiff was allowed to take leave without pay for medical reasons during the 2007-08 school year.

On April 24, 2008, Dixon recommended Plaintiff for termination for insubordination and willful neglect of duty and for not reporting to work on time.  Inexplicably, on June 6, 2008, Dixon signed Plaintiff's year-end evaluation document indicating that Plaintiff met all performance standards in accordance with Maryland law. On June 30, 2008, Plaintiff filed an EEOC charge for retaliation.

Defendant held a hearing on August 15, 2008 as part of Plaintiff's termination proceedings. At this hearing, Defendant suspended Plaintiff without pay and recommended Plaintiff for termination. Plaintiff subsequently filed another EEOC charge on August 19, 2008 for retaliation.

On August 31, 2011, Defendant filed a motion for summary judgment on all remaining claims. *See* Doc. No. 68. Plaintiff did not file a timely response to this motion. However, on September 21, 2011, the Clerk of the Court sent Plaintiff a Rule 12/56 letter granting Plaintiff another 17  days to respond to Defendant's motion , which was proper given Plaintiff's *pro se* status. Through oversight, the Court ruled on Defendant's motion before this 17-day period had expired. Upon discovering its inadvertent error, the Court vacated its Memorandum Opinion and Order and invited Plaintiff to file her response.

On October 7, 2011, Plaintiff filed a response to Defendant's motion. However, Plaintiff's response fails to address the issues noted by the Court in its prematurely issued Memorandum Opinion. Plaintiff has failed to demonstrate a serious health condition, and her response fails to address the body of evidence presented by Defendant showing documented issues with Plaintiff's performance and behavior occurring in the year leading up to her removal. *See* Doc. No. 69 Exs. 28-32. Although the Court questions why the  same principal who recommended Plaintiff's termination would then sign a performance review indicating that Plaintiff met all performance standards for the school year, this does not rise to the level of creating a genuine issue of material fact sufficient for Plaintiff's claim to survive summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded

to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with

affidavits or other similar evidence to show that a genuine issue of material fact exists. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for

the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the

evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party

cannot create a genuine dispute of material fact "through mere speculation or the building of one

inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).


III.     **ANALYSIS**

Plaintiff asserts claims under Title VII for retaliation and discrimination based on race,

and for violations of the FMLA based on allegations that she was denied reasonable

modifications to her work schedule in April 2007. After reviewing the record, the Court does not

believe Plaintiff's claims can survive summary judgment. Plaintiff has failed to produce facts

sufficient to support of any of her claims.


A.       Discrimination on the Basis of Race

The Court first addresses Plaintiff's claim that her rights under Title VII were violated

when she was denied school counselor positions because of race-based discrimination. Title VII

makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin." 42 U.S.C. § 200e-2(a)(1). Plaintiff, who is African-American, argues that

Defendant failed to secure her a school counselor position because she is black. Plaintiff may

prove this alleged violation of Title VII in either of two ways: (1) by "using any direct or indirect

evidence relevant to and sufficiently probative" of discriminatory purpose, or (2) by using the

burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973).

Because Plaintiff has not presented any direct evidence of race discrimination, she must

proceed under the *McDonnell Douglas* burden-shifting approach. Under this scheme, the

plaintiff must first must establish a *prima facie* case of discrimination. *See McDonnell Douglas

Corp.*, 411 U.S. at 802.  To establish a *prima facie* case, Plaintiff must show that: (1) she is in a

protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected

to an adverse employment action; and (4) she was treated differently from similarly situated

individuals outside of her protected class. *Trammell v. Balt. Gas & Elec. Co.*, 279 F. Supp. 2d

646, 655 (D. Md. 2003) (quoting *Nichols v. Harford County Bd. Of Educ.*, 189 F. Supp. 2d 325,

340 (D. Md. 2002)). If the plaintiff meets this burden, the defendant must present a legitimate,

nondiscriminatory reason for the challenged conduct. *See Reeves v. Sanderson Plumbing Prod.,

Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

(1981)).  If the defendant succeeds in doing so, that will rebut the presumption of discrimination

raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206

F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must

"prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  In the

end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally

6

discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.

1996) (citing *Burdine*, 450 U.S. at 253).

Defendant argues that Plaintiff cannot establish a *prima facie* case because Plaintiff was

not subject to an adverse employment action when Defendant assigned her to teaching positions

rather than school counselor positions. Moreover, Defendant argues that Plaintiff cannot show

that she was treated differently from similarly situated individuals outside of her protected class

because Plaintiff does not know if persons outside of her protected class were hired for the

school counselor position for which she applied. Defendant contends that even if Plaintiff

established a *prima facie* case, it has established legitimate, nondiscriminatory reasons for not

hiring Plaintiff as a counselor: there were no known counselor positions available for the 2006-

2007 school year. Defendant asserts that Plaintiff has not offered any evidence to show that

Defendant's reasons for assigning Plaintiff to teaching positions rather than school counselor

positions were pretext for a discriminatory purpose.

Plaintiff contends that she suffered an adverse employment action because she was

denied counselor positions at Kennedy High School, Bradley Hills Elementary, and North Chevy

Chase Elementary upon her return from medical leave. First, Plaintiff claims she was aware of a

vacant counselor position at Kennedy High School in December 2006. However, Plaintiff

acknowledges that she never applied for a position at Kennedy High School. Moreover, Plaintiff

took medical leave during the month of December and submitted information to Defendant

stating that she was unable to return to work at that time. Thus, Plaintiff suffered no adverse

employment action when Defendant failed to assign her to the Kennedy High School counselor

position.

Second, Plaintiff claims that she was not offered a vacant counselor position at Bradley

Hills Elementary. However, Plaintiff acknowledges that she did not fill out an application to

7

apply to work as a counselor at this school. Third, Plaintiff claims that she applied for and was not hired for a counselor position at North Chevy Chase Elementary for the 2007-2008 school year. However, Plaintiff acknowledges that she was later hired to be a school counselor for the 2007-2008 school year at Paint Branch High School; the same position Plaintiff was seeking at North Chevy Chase Elementary. Thus, there is no evidence that Plaintiff suffered an adverse employment action. An adverse employment action is a discriminatory act that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (citations omitted), *cert. denied*, *James v. Booz-Allen & Hamilton, Inc.*, 543 U.S. 959 (2004). Although Plaintiff did not receive her position of choice upon her return from medical leave in late 2006 and early 2007, she was offered several teaching positions at the same pay level as the counselor positions. "The mere fact that a new job assignment is less appealing to the employee . . .does not constitute adverse employment action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d at 376 (citations omitted). Accordingly, Plaintiff has failed to show any adverse employment action.

Moreover, Plaintiff has produced no evidence suggesting that she was treated differently because of her race. Plaintiff failed to show that she even applied for school counselor positions at any of the schools except for North Chevy Chase Elementary. Plaintiff states that the school counselor working at North Chevy Chase Elementary at the time of her interview was white. Doc. No. 68 Ex. 3 at 35. However, Plaintiff has not shown that the position for which she was interviewing, for the 2007-2008 school year, was filled by a non-African-American applicant. Moreover, Plaintiff eventually received a position as a school counselor at Paint Branch High School for the 2007-2008 school year.

Accordingly, the Court finds that Plaintiff has not established a *prima facie* case of race-based discrimination. Even if Plaintiff had established a *prima facie* case, Defendant has

8

presented legitimate, non-discriminatory reasons for assigning Plaintiff to teaching positions rather than a school counselor position: namely, there were no known counselor positions available for the 2006-2007 school year that coincided with Plaintiff's taking medical leave. The Court does not find that Plaintiff presented any evidence to show that Defendant's legitimate, non-discriminatory reasons were pretextual. Plaintiff does not contend that the principal from North Chevy Chase Elementary who chose not to hire Plaintiff for the 2007-2008 school year bore discriminatory animus toward African-American employees like Plaintiff. In fact, Plaintiff acknowledges that the principal was African-American himself. Moreover, Defendant has shown that it made multiple offers to secure Plaintiff with a teaching position, and that she declined those offers. Finally, Defendant secured Plaintiff with a school counselor position beginning July 1, 2007, when one became available. For these reasons, the award of summary judgment to Defendant is appropriate on Plaintiff's race-based discrimination claim.

B.    Retaliation

Plaintiff alleges that Defendant retaliated against her in violation of Title VII when, in response to her filing an EEOC charge on June 30, 2008, Defendant suspended Plaintiff and recommended her for termination. Defendant contends that Plaintiff cannot establish a *prima facie* case under these facts.

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 200e-3(a). The Court analyzes a retaliation claim using the *McDonnell Douglas* framework. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). A *prima facie* case for retaliation exists where: (1) the plaintiff

engages in protected activity; (2) an adverse employment action occurs against the plaintiff; and

(3) there is a causal connection between the protected activity and the employment action.

*Causey*, 162 F.3d at 803. The plaintiff's burden in this regard is "not onerous"; it requires only

that she prove each element by a preponderance of the evidence. *See Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The protected activity cited by Plaintiff is her filing of an EEOC charge on June 30, 2008,

regarding harassment by her employer for being late to work; harassment she claimed was race-

based. This activity is protected under the opposition clause of § 2000e-3(a). Thus, Plaintiff has

alleged that she engaged in a protected activity and the first element of the *prima facie* case is

satisfied. The Court also finds that Plaintiff suffered an adverse employment action given that

she was suspended from her position and recommended for termination on August 15, 2008.

Thus, Plaintiff need only establish a sufficient nexus between her complaint and her

suspension to make out a *prima facie* case. The close proximity of only six weeks between

Plaintiff's complaint and her suspension is strong evidence of a causal connection. *See*, *e.g.*,

*Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (holding that a ten-week lapse

of time between the plaintiff's complaint and the adverse employment action established a causal

connection sufficient to survive a motion to dismiss). However, timing is not determinative in

establishing a causal connection at the summary judgment stage. Even if the protected activity

and the alleged retaliation occur within a short period of time, the employer may provide

evidence of legitimate reasons for the action. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452,

457 (4th Cir. 1989) (finding that mere knowledge on part of employer that employee about to be

fired has filed a discrimination charge is not sufficient evidence of retaliation to counter

substantial evidence of legitimate reasons for discharging that employee).

Here, even though Plaintiff was suspended a mere six weeks after filing an EEOC charge, the Court finds that Defendant has presented strong evidence of legitimate, non-discriminatory reasons for suspending Plaintiff that Plaintiff has not shown to be pretextual. On April 24, 2008, before Plaintiff filed the EEOC charge, Paint Branch High School Principal Jeannette Dixon recommended disciplinary action against Plaintiff, "up to, and including, dismissal against" Plaintiff. Doc. No. 68 Ex. 30 at 1. Dixon stated that Plaintiff: "neglected her duties to students," "came to work late on a daily basis despite being given reasonable accommodations for arrival due to an injury she suffered two years ago," "engaged in abusive upbraiding of staff including her supervisor," "[had] been rude and taken umbrage at being asked to do things a counselor would normally do for parents and students resulting in multiple requests for counselor changes," "told the resource counselor she is not her supervisor," "continued to take leave that she does not have available and, in disregard of the needs of students, schedules doctor's appointments during the instructional day," and "refused to follow the directives of the principal whom she has told she only needs to follow the advice of the [union's] MCEA Uniserve representative." Doc. No. 68 Ex. 30 at 1.

Taken as a whole, these circumstances suggest that Plaintiff was struggling in her day-to-day position as a school counselor. Given Defendant's numerous cited legitimate, non-discriminatory reasons to suspend Plaintiff and recommend her for termination, all of which arose before Plaintiff filed her June 30 EEOC charge, the Court finds that the decision to suspend Plaintiff was based upon legitimate, non-discriminatory reasons. Accordingly, Plaintiff's retaliation claim must also be dismissed.

C.      Violations of the FMLA

Plaintiff alleges violations of the FMLA on the grounds that she was denied reasonable modifications to her work schedule in April 2007 by Marc Cohen, the principal of Dr. Martin Luther King, Jr. Middle School. The FMLA provides that an eligible employee is entitled to 12 weeks of leave per year for a 'serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D) (2006). There are two potential claims under the FMLA. An employee can either claim that his employer interfered with his substantive rights under the FMLA, such as by "discouraging an employee from taking leave," or that his employer retaliated against him for exercising FMLA rights. *Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 (D. Md. 2009). According to Plaintiff's Amended Complaint, she is bringing her FMLA claim under a theory that her employer interfered with her FMLA rights.

In the Fourth Circuit, to state a claim of interference with FMLA rights, the employee must show that "the employer: (1) interfered with his or her exercise of FMLA rights; and (2) caused prejudice thereby." *Reed v. Buckeye Fire Equipment*, 241 Fed. Appx. 917, 924 (4th Cir. 2007). In *Reed*, the Fourth Circuit explained that "actionable interference exits where the employer . . . interferes . . . with the exercise of any the rights protected [under] the FMLA" and that prejudice is established "where an employee loses compensation or benefits . . . ; sustains other monetary losses . . . ; or suffers some loss in employment status remediable through 'appropriate' equitable relief." *Id.* (citation omitted). As stated by this Court,

> The core requirements for triggering an employer's obligations [under FMLA] are a *serious health condition* and *516 *adequate communication,* meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply. *See* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302-.303. When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact has a serious health condition.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008).  Thus, in addition to proving that the employer interfered with the employee's rights which caused prejudice to the employee, the employee also must show that: (1) "she was an eligible employee"; (2) "her employer was covered by the statute"; (3) "she was entitled to leave under the FMLA"; and (4) "she gave [the] employer adequate notice of her intention to take leave."  *Id.* at 516 (explaining that although an employee does not need to explicitly state that she seeks to take FMLA leave, mere notice that the employee is sick without details about the nature of the illness is insufficient to indicate to the employer that FMLA leave is necessary).

Here, Plaintiff has not demonstrated: (1) that she has a serious medical condition which would entitle her to FMLA leave; or (2) that she gave her employer adequate notice of her need for leave. In regard to her health condition, Plaintiff stated that she was involved in a motor vehicle accident in April 2006, but has not otherwise identified a serious health condition. In regard to giving her employer notice, Plaintiff notified Principal Marc Cohen at the end of her first day of work on March 13, 2007 that she would be taking leave the next day for a previously scheduled appointment. Doc. No. 68 Ex. 21 at 1. Cohen responded that Plaintiff needed to provide a form to request leave. *Id.* Plaintiff proceeded to take leave throughout the month of April without giving notice. Doc. No. 68 Ex. 22.

Moreover, as this Court explained in *Rodriguez*, simply notifying Defendant that Plaintiff needs to attend a medical appointment is insufficient to alert the employer that FMLA leave is needed, especially without information concerning the nature of the illness. FMLA leave only entitles an employee to leave for serious health conditions, and unless the employee provides some notification that the medical appointment is in connection with a qualifying condition, the employer is unable to ascertain whether FMLA is necessary. Moreover, as Defendant argues, Plaintiff was given numerous warnings about taking unscheduled leave and was told about the

13

need for submitting a leave form and documentation for the requested leave.  Doc. No. 68 Ex. 22

at 2. "The core requirements for triggering an employer's obligations [under the FMLA] are a

*serious health condition* and *adequate communication*, meaning a timely communication

sufficient to put an employer on notice that the protections of the Act may apply." *Rodriguez*,

545 F. Supp. at 515-16. *See also* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302–.303.

Accordingly, the Court finds that Plaintiff has not provided sufficient evidence for a reasonable

jury to conclude that Defendant violated the FMLA, and grants Defendant's motion for summary

judgment on this claim.


IV.     **CONCLUSION**

          For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. A

separate order will follow.


October 25, 2011                                          /s/
         Date                                    Alexander Williams, Jr.
                                                 United States District Judge